## CHARLES F. WALKER *vs.* HOLLY HUNT.

### January Term, 1868.

The † statute providing for the taking of an indemnifying bond by the officer levying on property, does not preclude a party claiming to be the owner of the property levied upon, other than the judgment debtor, from his right to go into a court of equity to obtain an injunction against the sale of the same, when he has no complete and adequate remedy at law.

In the fall of 1858, *Charles F. Walker* purchased a stock of goods of a mercantile firm at the *Kanawha Salines* in *Kanawha* county, known as *F. Walker & Co.*, composed of *F. Walker*, *N. B. Cabell*, and *John P. Hale.* By the terms of

---

* He was absent from illness.

† 4. If any officer levies or is required to levy an execution or a warrant of distress on property, and a doubt shall arise whether the said property is liable to such levy, he may give to the plaintiff, his agent or attorney at law, notice that an indemnifying bond is required in the case. Bond may thereupon be given by any person, with good security, payable to the officer, in a penalty equal to double the value of the property, conditioned to indemnify him against all damages, which he may sustain in consequence of the seizure or sale of the said property, and to pay to any claimant of such property all damages which he may sustain in consequence of such seizure or sale; and also to warrant and defend, to any purchaser of the property, such estate or interest therein as is sold.

5. If such bond be not given within a reasonable time after such notice, the officer may refuse to levy on such property, or restore it to the person from whose possession it was taken, as the case may be. If it be given, where there has been no levy, within a reasonable time, or after a levy, before the property is so restored, it shall be returned within twenty days to the clerk's office from which the execution issued, or if the execution was not issued by a clerk, to the office of the court by which such officer was appointed, or in which he qualified.

6. The claimant or purchaser of said property shall, after such bond is so returned, be barred of any action against the officer levying thereon, provided the security therein be good at the time of taking it. But the sale of any such property shall be suspended at the instance of any claimant thereof, who shall deliver to the officer bond with good security, in a penalty equal to double the value thereof, payable to said officer, conditioned to pay to all persons, who may be injured by suspending the sale thereof until the claim thereto can be adjusted, such damages as they may sustain by such suspension. Upon any such bond as is mentioned in this or the preceding section, suit may

the purchase he took all the goods on hand and the debts due the firm, and was to pay its liabilities and certain other sums, agreed upon, to each member of the firm individually. He assumed control of the goods and business on the completion of the sale and assumed the debts to the creditors of the firm and paid off and discharged them as rapidly as his business permitted. In 1859, one *Holly Hunt* obtained judgments against *F. Walker* and *John P. Hale*, as trustees of one *A. Donnally's* estate, which they were managing, for 379 dollars and 48 cents, and 1,133 dollars and 77 cents, respectively.

In February, 1864, *Hunt* caused a writ of *fieri facias* to be issued from the clerk's office of *Kanawha* county, for the amount of his judgments, and levied on the stock of goods of *Charles F. Walker*, in his store at *Kanawha Salines*, alleging that tit weas the property of *F. Walker*, one of his judgment debtors.

*C. F. Walker* then obtained an injunction, alleging that his stock of goods was worth about 12,000 dollars, and that great injury would result to his business and credit if the sale of his goods was effected under the *fieri facias*, and that the goods levied on were his own property, not belonging to either of the judgment debtors, and that every obligation and debt which he had assumed six years before, due from the firm of *F. Walker & Co.*, as a part of the original con-

be prosecuted, in the name of the officer, for the benefit of the claimant, creditor, purchaser or other person injured, and such damages recovered in said suit as a jury may assess. The same may be prosecuted and execution had, in the name of such officer when he is dead, in like manner as if he were alive.

7. The sheriff or other officer levying a writ of *fieri facias* or distress warrant on property, the sale of which is suspended under this chapter at the instance of a claimant thereof, may, if such claimant desire the property to remain in such possession as it was immediately before the levy, and if the case be one in which a bond for the forthcoming of the property is not prohibited from being taken from the debtor by the sixth section of chapter one hundred and eighty-nine, take from the claimant a bond with sufficient surety, payable to the creditor, with such recital as is required in a forthcoming bond taken from the debtor, and with condition that the property shall be forthcoming at such day and place of sale as may be thereafter lawfully appointed; whereupon, such property may be permitted to remain at the risk of such claimant in such possession as it was immediately before the levy; and the second, third, fifth, sixth and seventh sections of chapter one hundred and eighty-nine shall apply to such forthcoming bond in like manner as to a forthcoming bond taken from the debtor.

sideration for the original stock of goods, was paid, except a debt of about 1,200 dollars, due to certain parties at *Point Pleasant,* which he had personally assumed and for which he had rendered himself liable; and that he had paid to the individual members of said firm all sums due them, acording to the terms of his purchase; that in fact the goods levied upon were wholly his own, and that the judgment debtors had no interest whatever in them.

At the May rules, 1864, the defendant, *Holly Hunt,* answered, denying the sole ownership in the complainant, of the goods, and alleging fraud in the sale of the same, and gave notice that he would move the court to dissolve the injunction at the next term.

At the July term following the court, on motion of the defendant, dissolved the injunction; whereupon, *C. F. Walker,* complainant, obtained a suspension of the decree so dissolving for thirty days, and obtained an appeal and supersedeas from this court.

*Lamb & Paull* for the appellant.
*B. H. Smith* for the appellee.

MAXWELL, J.  There are but two questions arising upon the record of this case.  The first is a question of jurisdiction, the appellant maintaining that a court of equity has jurisdiction to enjoin the sale of the property levied on while the defendant denies it.  The second is a question of fact in which the appellee maintains that the transaction is fraudulent, and that although it be decided that the court might take jurisdiction upon the facts charged in the bill, yet upon the facts proved the injunction was properly dissolved.

On the first question the appellee maintains that there was a complete remedy at law, and that therefore a court of equity cannot give relief.  It is claimed that sections 4, 5, 6 and 7 of chapter 152, Code of Virginia, page 655, give such complete remedy at law.  The indemnifying bond here referred to was not given and returned to the clerk's office in this case.  If the bond had been given what would be its

effect? Nothing further, I imagine, than to relieve the sheriff from liability, provided the security in such bond had been good at the time of taking it. If the bond had been given the appellant might have sued on it for any cause for which he might have sued the sheriff if it had not been given. And, moreover, he might sue any purchaser of any of his property at sheriff's sale for any cause for which he might have sued if the bond were not given. It is claimed that since the statute giving the indemnifying bond, the case of *Bowyers, &c.,* vs. *Creigh, &c.,* 3 Rand., 25, and the case of *Allen* vs. *Freeland,* Ibid, 170, establish the doctrine that a court of equity will not in any case enjoin the sale of personal property under an execution. I cannot understand these cases in that way. I understand them to establish the doctrine that in no case where the plaintiff claims as an incumbrancer merely will a court of equity interpose, but when he claims as owner it will interpose in all cases where from the nature of the case the remedy at law is incomplete. In the subsequent cases of *Randolph* vs. *Randolph,* 6 Rand., 194; *Sims* vs. *Harrison,* 4 Leigh, 346; *Kelly* vs. *Scott,* 5 Gratt., 479, and *Summers, and others,* vs. *Bean,* 13 Gratt., 417, the doctrine is fully established and acted upon that slaves ought *prima facie* to be considered as of peculiar value to their owners, and not properly a subject for adequate compensation in damages as land is considered to be to a purchaser; and in the cases of *Randolph* vs. *Randolph, Sims* vs. *Harrison,* and *Kelly* vs. *Scott,* the sale of slaves under executions was enjoined. These cases are all consistent with one another, and with the theory of equity relief, and clearly determine the question that the statute referred to does not take from the party his right to go into a court of equity for relief, where there is no adequate remedy at law. The case of *Watson* vs. *Sutherland,* 5 Wallace, 74, in which an injunction was held to be the proper remedy, is consistent with the principles of these cases and in its facts has a striking similarity to the case under consideration. It may not be out of place to remark in connection with this case of *Watson* vs. *Sutherland* that the equity jurisdiction of the courts of the

United States is independent of the local law of any State, and is the same in nature and extent as the equity jurisdiction in England from which it is derived, and is, therefore, the same as the equity jurisdiction of the courts of this State. *Dodge* vs. *Woolsey,* 18 Howard, 347; *Green's administratrix* vs. *Crighton, et al.,* 23 Howard, 105; *Livingston* vs. *Story,* 9 Peters, 632.

It seems to me clear that the appellant in the case under consideration has no other complete remedy than that which he has sought to pursue. As the order dissolving the injunction was made on motion before the cause was ready for final hearing, I do not consider it proper to express any opinion on the facts of the case, but am of opinion that the order dissolving the injunction was erroneous and ought to be reversed, with costs to the appellant, the injunction reinstated, and the cause remanded to the circuit court of Kanawha county to be further proceeded with therein. *Gray* vs. *Overstreet, &c.,* 7 Gratt., 346.

The President concurred.

Decree reversed.